**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: : | Bankruptcy No. 09-27903JAD |
| N. JOHN CUNZOLO ASSOCIATES, INC., : | Chapter 7 |
| Debtor. : | Related to Doc. No. 7 |
| _____ X | |

**MEMORANDUM OPINION**

The matter before the Court is the above captioned Debtor's *Application for Approval of Attorneys* (the "Application"). The Application is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). For the reasons set forth below, an order shall be entered which denies the Application.

**I.**

By the Application, the Debtor seeks this Court's approval of the Debtor's retention of the Robert O Lampl law firm as bankruptcy counsel. The Application was filed by the Debtor when this case was originally commenced as a Chapter 11; but this case was subsequently converted to a Chapter 7 liquidation. Even though the case was subsequently converted to a Chapter 7, the Application has remained a case and controversy because without court approval of the Application, proposed counsel would not be entitled to be paid any fees as a result of its Chapter 11 representation of the Debtor. See W/B Associates v. Mericle Commercial Real Estate Group, Inc. (In re W/B Associates, Inc.), 227 B.R. 635, 637 (Bankr. W.D. Pa. 1998)("Unless the employment of a professional serving the estate is approved by the court, that professional is not entitled to compensation from the estate.")(citing 11 U.S.C. §§ 327, 330; F/S Airlease II, Inc. v. Simon, 844 F.2d 99 (3d Cir. 1988), cert. denied 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110

(1988)); see also In re Albrecht, 245 B.R. 666, 671 (B.A.P. 10th Cir. 2000) ("Any professional not obtaining approval is simply considered a volunteer if it seeks payment from the estate.")(quoting Interwest Bus. Equip., Inc. v. United States Trustee (In re Interwest Bus. Equip., Inc.), 23 F.3d 311, 318 (10th Cir. 1994)).

Initially, the Office of the U.S. Trustee filed a response in the nature of an objection to the retention Application because counsel for the corporate Debtor failed to provide information relative to counsel's representation of the Debtor's principal and sole shareholder - N. John Cunzolo.  This Court shared the U.S. Trustee's concerns because the admissions of the Debtor on file indicate that, at best, counsel's representation of the corporate Debtor and its principal created a potential conflict of interest.  It also was the Court's view that the admissions on file also indicated that such representation may also have created an actual conflict of interest.

Under these circumstances, the Court (by order dated December 7, 2009) instructed that both proposed counsel and the Debtor submit supplemental affidavits addressing the Court's (and the U.S. Trustee's) concerns.  Proposed counsel submitted a supplemental affidavit; the Debtor through its principal did not.  Thereafter, the U.S. Trustee accepted proposed counsel's statements in his affidavit and advised the Court that it was of the view that no actual conflict of interest was present by proposed counsel's representation of both the Debtor and its principal.[1]  Nonetheless, the Court's concerns regarding the potential conflict of interest remained.

---

1. For purposes of this *Memorandum Opinion and Order* the Court accepts as true the conclusion of the United States Trustee that no actual conflict exists.  But see In re Adam Furniture Indus., Inc., 159 B.R. 591 (Bankr. S.D. Ga. 1993)(bankruptcy court determined that an actual conflict existed where proposed counsel represented a debtor entity, principal of the debtor and various affiliated entities who were the source of counsel's fees and were also potential defendants in possible avoidance actions.)

**II.**

As an initial matter, the Court notes that the dual representation of a closely held corporation and its principal has been disfavored by various bankruptcy courts. See e.g., In re Frascella Enterprises, Inc., 06-10322DWS, 2006 WL 1530256 (Bankr. E.D. Pa. April 12, 2006); In re BH & P Inc., 949 F.2d 1300 (3d Cir. 1991); Matter of Bohack Corp., 607 F.2d 258 (2d Cir. N.Y. 1979).

The Court also observes that the retention Application filed by the Debtor is governed by 11 U.S.C. § 327(a). This provision of the Bankruptcy Code requires that an attorney representing a debtor-in-possession must not "represent an interest adverse to the estate." 11 U.S.C. § 327(a).

A leading treatise on bankruptcy states that an interest adverse to the estate includes "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute," or "a predisposition under the circumstances that render such bias against the estate." 3 COLLIER ON BANKRUPTCY ¶327.04[2][b] (15th ed. rev., Alan N. Resnick & Henry J. Sommer eds.)(quoting In re American Printers & Lithographers, Inc., 148 B.R. 862, 864 (Bankr. N.D. Ill. 1992) and citing Kravit, Gass & Weber, S.C. v. Michel (In re Crivello), 134 F.3d 831, 835 (7th Cir. 1998)(which itself quotes In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah 1985)); see also In re First Jersey Securities, Inc., 180 F.3d 504, 509 (3d Cir. 1999).

Section 327 of the Bankruptcy Code also requires that proposed counsel to the debtor-in-possession be a "disinterested" person. 11 U.S.C. § 327(a). A "disinterested person" is, in-turn, defined under the Bankruptcy Code as a person who "does not have an interest materially adverse to the interest of the estate or of any class of creditors . . . by reason of any direct or indirect relationship to,

connection with, or interest in, the debtor, or for any other reason." <u>See</u> 11 U.S.C. § 101(14)(c).

The admissions on file in this case reflect that proposed counsel is not a "disinterested person" and holds an "interest adverse" to the bankruptcy estate because this case is ripe with potential conflicts for proposed counsel. For this reason the Court exercises its discretion and will deny the Application. <u>See</u> <u>In re First Jersey Securities, Inc.</u>, <u>supra</u>; <u>In re Marvel Entertainment Group, Inc.</u>, 140 F.3d 463, 476 (3d Cir. 1998); <u>In re BH&P, Inc.</u>, 949 F.2d 1300, 1317 (3d Cir. 1991).

The undisputed record in this case indicates that the Debtor commenced this case as a voluntary Chapter 11 by filing a petition with the Court on October 27, 2009. The record also reflects that for roughly thirty (30) years prior to the Debtor's bankruptcy filing, proposed counsel had extensively represented the Debtor, its principal and sole shareholder, and certain of the shareholder's other business interests in various legal matters, including without limitation contract disputes and defense of foreclosure actions. (<u>See</u> Doc. #46, *Affidavit of Robert O Lampl*, ¶¶ 3, 4.)

The record further reflects that the Debtor is an architectural firm that, in the ten (10) month period leading up to the commencement of the bankruptcy case in October of 2009, had revenues approximating $1.6 million dollars. Its 2009 revenues exceeded its 2007 and 2008 revenues by approximately $300,000 for each year; and in each of those two prior years the Debtor's revenues had approximated $1.3 million. (<u>See</u> Doc. #25, *Statement of Financial Affairs; Interrogatory No. 1*).

But, during the ninety (90) day preference period right before the bankruptcy filing on October 27, 2009, the Debtor allegedly ceased doing business

in the face of foreclosure by certain of the Debtor's mortgage creditors. In connection thereto, the Debtor conveyed its business premises to N. John Cunzolo's wife (Lila Cunzolo) and conveyed all of its personalty to an entity known as JC Pierce, LLC (whose equity holders include N. John Cunzolo's stepson John Cevario). (See Doc. #46, *Affidavit of Robert O Lampl*, ¶7(b)).[2] These transactions resulted in the transfer of substantially all of the hard assets away from the Debtor to Ms. Cunzolo and JC Pierce, LLC respectively.[3] JC Pierce, LLC apparently is in the same line of business as the Debtor and JC Pierce, LLC now operates its business in the very same premises conveyed to Lila Cunzolo.

At the hearing on proposed counsel's retention, counsel did state to the Court that the Debtor did have ongoing construction related contracts prior to the petition date. But, the status of the Debtors' architecture/construction related contracts has not been disclosed by the Debtor or its proposed counsel. Were these assets transferred to JC Pierce, LLC too? Nothing in the schedules or statement of financial affairs filed by the Debtor reflect the disposition of such assets.

Given the transactions set forth above, when the Debtor commenced this bankruptcy case as a Chapter 11 reorganization, the Debtor was left with no real business to reorganize and was left with no material assets from which the

---

2. John Cevario was also involved in the Debtor entity in some capacity having received a yearly salary of $42,000 (See Doc. #25, *Statement of Financial Affairs, Interrogatory No. 23*). According to the Debtor's filings, Mr. Cevario is the only insider listed as having received a distribution from the Debtor in the year preceding the commencement of the case. Nothing in the record indicates whether the other disclosed equity holder of JC Pierce, LLC, Mr. Ryan Pierce, previously had any involvement with the Debtor.

3. JC Pierce, LLC allegedly paid $15,000 for the personal property. The Debtor had no cash as of the petition date, but paid a $10,000 retainer to counsel. The Court therefore presumes that the source of the funds for the $10,000 retainer was the proceeds allegedly paid by JC Pierce, LLC. The Court does not know the disposition of the remaining $5,000, as no disposition of the funds is identified in the Debtor's schedules and statement of financial affairs. With respect to the transfer of the real estate, it appears that Ms. Cunzolo paid no cash for the real estate. However, as discussed more fully in the body of this *Opinion*, the transaction apparently was made "subject to existing liens."

Debtor's substantial liabilities (which approximate $2,305,411.22) can be paid. Indeed, based on the schedules of assets and liabilities on file, it appears that the only avenue for which creditors may get paid in this case is through the investigation and, if necessary and appropriate, pursuit of avoidance and other causes of action under Chapter 5 of the Bankruptcy Code. Of course, the targets of any investigation (and, if appropriate, the prosecution of legal causes of action) include the close family members of N. John Cunzolo who received pre-bankruptcy transfers.[4]

It is this Court's view that the transfers to or for the benefit of N. John Cunzolo's family members and/or their affiliates on the eve of the bankruptcy filing placed proposed counsel in an untenable position while this case was in Chapter 11. How could have counsel represented the bankruptcy estate (whose duties include maximizing value for creditors) all the while N. John Cunzolo's immediate family interests were (and continue to be) potentially divergent?[5] The Court really sees no basis for which proposed counsel could have represented

---

4. Nothing contained in this *Memorandum Opinion* should be construed as a ruling on the merits, either positively or negatively, on any legal causes of action. The Court merely is acknowledging that potential claims may exist, and that proposed counsel was not disinterested with respect to investigating them during the Chapter 11.

5. An attorney for the debtor-in-possession has a fiduciary duty "not only to the debtor, but has a fiduciary obligation to act in the best interest of the entire estate, including creditors." In re United Utensils Corp., 141 B.R. 306, 309 (Bankr. W.D. Pa. 1992). In this regard, the debtor-in-possession and its counsel have a duty to maximize value for the estate as a whole. ICM Notes, Ltd. v. Andrews & Kurth, LLP, 278 B.R. 117, 124 (S.D. Tex. 2002)(citing In re Keene Corp., 205 B.R. 690, 691 (Bankr. S.D.N.Y. 1997)). This includes insuring the protection of creditors rights. In re Adam Furniture Indus., Inc., 158 B.R. 291, 301 (Bankr. S.D. Ga. 1993). As the Court in Adam Furniture stated:

> Even though the law firm acts as attorney for the debtor-in-possession, it also has certain fiduciary duties to the estate, including insuring that the rights of the creditors are protected. In re Sky Valley, Inc., 135 B.R. 925, 939 (Bankr. N. D. Ga. 1992). This protection extends to a good faith impartial analysis by counsel for the debtor-in-possession of whether to devote assets of the estate to the pursuit of potential preferential transfers or fraudulent conveyances for the ultimate benefit of estate creditors.

Id.

both the estate and Mr. Cunzolo under these circumstances.[6] The taint is simply too much.

As a result, the Court finds that proposed counsel holds an interest adverse to the bankruptcy estate and is not disinterested by virtue of the Robert O Lampl law firm's relationship with N. John Cunzolo and the corresponding indirect relationship with Ms. Cunzolo, Mr. Cevario, and JC Pierce, LLC (which is the entity in which Mr. Cevario holds an equity interest). This Court's conclusion that proposed counsel holds an interest adverse to the estate and is not disinterested is particularly acute given the fact that bankruptcy courts have held that disqualification is appropriate "if it is plausible that the representation of another interest may cause the debtor's attorneys to act any differently than they would without that other representation." In re Granite Partners, L.P., 219 B.R. 22, 33 (Bankr. S.D. N.Y. 1998) (quoting In re Leslie Fay Cos., 175 B.R. 525, 533 (Bankr. S.D. N.Y. 1994)). Similarly, other courts have held that a court should disqualify "any professional with an interest that would even faintly color the independence and impartial attitude required by the Code." Id. (quoting In re Crivello, 134 F.3d at 835-36). Indeed, another bankruptcy court has held:

> Strong policy reasons support the prohibition of the simultaneous representation of potential conflicts by counsel for a trustee or a debtor in possession. It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict: Any potential conflict of interest represents a potential to overlook an asset or defense of the estate. Thus a potential conflict of interest, while it

---

6. Further, N. John Cunzolo is a codebtor on three of the four mortgages on the real estate that the Debtor transferred to Lila Cunzolo. (See Doc. #25, *Schedules D and H).* As a codebtor, Mr. Cunzolo may be called upon to satisfy the mortgage debt if the Debtor does not meet its obligations. If so, Mr. Cunzolo may have claim against the debtor. Accordingly, Mr. Cunzolo would be a contingent creditor of this estate. See e.g., In re Adam Furniture Indus., Inc., 158 B.R. at 299; see also 11 U.S.C. § 509.

may be otherwise ethically proper, is not normally permitted under section 327.

<u>In re McKinney Ranch Associates</u>, 62 B.R. 249, 254 (Bankr. C.D. Cal. 1986).

### III.

In rendering this decision today, the Court has considered this matter carefully and with due regard to the Debtor's choice of counsel. This Court also renders its decision mindful of the fact that while proposed counsel has extensively represented N. John Cunzolo and his related entities for over thirty (30) years, counsel has stated to the Court in his affidavit that proposed counsel's firm was not involved in the transfer of any assets to Lila Cunzolo and JC Pierce, LLC. (<u>See</u> Doc. #46, *Affidavit of Robert O Lampl* at ¶ 7(a) ("I did not represent any party in that transaction....") <u>and</u> at ¶ 7(b) ("I note initially that I was not involved in the transfer of assets and represented no party in regard thereto.")).

As a part of the Court's decision today, the Court has further considered the fact that this case has been converted to Chapter 7 and a trustee has been appointed. However, these subsequent developments do not alleviate the fact that when this case was commenced as a Chapter 11 (and continuing through the date of conversion), counsel was not a disinterested person under the Bankruptcy Code. Since proposed counsel was not disinterested and was subject to adverse interests from the outset, the Court really sees no discernable basis upon which the Chapter 11 retention Application should be granted. <u>Cf</u>. <u>In re Big Mac Marine, Inc.</u>, 326 B.R. 150, 155 (8th Cir. B.A.P. 2005)(order of the bankruptcy court denying fee application and denying motion to reconsider is affirmed even though attorney argued that conflict had dissipated). Indeed, proposed counsel assumed the risk from day one that the retention Application could be denied.

## IV.

In rendering its decision today, the Court has also considered the statements of counsel whereby counsel has contended that the transactions at issue somehow did not cause a diminution of the estate. Specifically, counsel has suggested that the transfer of real estate to Lila Cunzolo passes muster because the real estate has an alleged fair market value of $600,000 and has liens against it in the amount of $1,800,000. But, the basis for the real estate valuation is missing from the affidavit and no appraisal is attached. In addition, the principal of the Debtor filed no affidavit as required by this Court's prior order and no independently reliable information is of record for which the Court can make a finding with respect to the value of the transferred property.

In addition, even if the Court were to accept counsel's hearsay statement of value, the explanations by proposed counsel with respect to the Debtor's pre-petition transactions with insiders or affiliates of N. John Cunzolo befuddle the Court. For example, if the values stated by counsel are accurate, why would a person accept a transfer of real estate valued at $600,000 when the realty is encumbered by liens in the amount of $1,800,000? When asked about the transfer of these assets at the hearing on the Application, proposed counsel indicated that the purpose of the transfer was "for comfort sake" to avoid certain tax claims and other claims in litigation. Counsel also indicated that the transaction was made to "clean up" the title to "avoid complications." These explanations do not make sense. How does transferring an asset encumbered by $1,800,000 of liens clean up title and avoid complications?

Additional questions abound. For example, is the real estate actually worth more than $600,000 to Lila Cunzolo, or more than what counsel believes? Alternatively, if the real estate is not worth more than $600,000, do the claims of the lienholders extend to other assets of N. John Cunzolo or other third parties

such that the realty has a net economic value (whether by marshaling or otherwise)? Also, another question can be: Is the business operation at the premises where the economic value lies? Of course, if that is the case is such value now reposed with JC Pierce, LLC (owned, in part, by N. John Cunzolo's stepson John Cevario) and/or Lila Cunzolo? And, if the economic value is reposed in these parties, did these parties pay reasonably equivalent value for it?

In the December 3, 2009 *Order of Court Setting Rule to Show Cause Why Case Should Not Be Converted to Chapter 7*, the Court stated that "[i]t is not clear to the Court what has become of the debtor-in-possession's clients, if any." This inquiry is of course logical because in the first ten months of year 2009 the Debtor had at least $1.6 million in revenue. What happened to the customer accounts and/or contracts that gave rise to this revenue? Did they just disappear? The Court still has not received an answer to these questions as the Debtor converted this Chapter 11 case to a Chapter 7 without much explanation (other than to say that the Debtor cannot reorganize).[7]

Another question in this case is: Why was it commenced as a Chapter 11 in the first place when the Debtor no longer had any significant assets and was no longer operational? At the hearing on the retention application, the Court did not receive a meaningful answer to this question. In addition, because the case

---

7. Given the admissions on file and the statements of counsel at the hearing on the retention Application, the Court issued its *Order of Court Setting Rule to Show Cause as to Why Case Should Not Be Converted to Chapter 7*. The Court issued its Rule because the present record indicated that the Debtor's Chapter 11 may not have been filed in good faith. See In re 15375 Memorial Corp. v. Bepco, L.P., 589 F.3d 605 (3d Cir. 2009)(Chapter 11 not filed in good faith where debtor had no employees, offices or business; and the filing was not for the valid bankruptcy purpose of maximizing value for the estate); see also In re FRGR Managing Member LLC, 419 B.R. 576, 583 (Bankr. S.D.N.Y. 2009)(where there are few if any assets to administer, the estate is administratively insolvent and insiders potentially appear to be acting in their own personal interest rather than the interest of the estate and its creditors, the better course is conversion to a case under chapter 7). The Court also issued its Rule because the conveyance of assets to immediate family members of N. John Cunzolo on the eve of bankruptcy coupled with the potential conflicts of counsel constituted cause for the appointment of a bankruptcy trustee. In re FRGR Managing Member, LLC, 419 B.R. at 583. However, after the issuance of the Rule, and after concerns were raised about counsel's proposed retention, the Debtor had some sort of epiphany and moved to convert this case to a Chapter 7 before the Court's Rule hearing. The Court granted the motion.

was a Chapter 11, the Court also asked counsel to identify who would be charged with investigating possible causes of action on behalf of the estate. Counsel replied: "I do not know." No matter what, this case presents more questions than the limited answers that have been provided to the Court.

Lastly, the Court would note that the Debtor through its principal ignored this Court's December 7, 2009 directive and failed to file an affidavit addressing the Court's concerns as set forth in the *Order of Court Continuing Hearing on Application for Approval of Attorneys*. This failure of the Debtor to comply with the Court's directive is itself cause for the Court to deny the Application.

### V.

Based on the foregoing, the Court shall exercise its discretion and will deny the retention Application. An appropriate Order shall be entered.

Dated: February 23, 2010                /s/ Jeffery A. Deller
                                        JEFFERY A. DELLER
                                        U.S. Bankruptcy Judge

Case Administrator to mail copy to:

    Kathleen Robb, Esq., Trial Attorney for the Office of the U.S. Trustee
    Robert O Lampl, Esq.
    Rosemary C. Crawford, Esq., Chapter 7 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | Bankruptcy No. 09-27903JAD |
| N. JOHN CUNZOLO ASSOCIATES, INC., : | Chapter 7 |
| : | |
| Debtor. : | Related to Doc. No. 7 |
| : | |
| _____ X | |

## ORDER OF COURT

**AND NOW,** this **23rd** day of **February, 2010**, for the reasons expressed in the accompanying *Memorandum Opinion*, the Court hereby **ORDERS**, **ADJUDGES** and **DECREES** that the *Application for Approval of Attorneys* is **DENIED**.

  /s/ Jeffery A. Deller  
JEFFERY A. DELLER  
U.S. Bankruptcy Judge

Case Administrator to mail copy to:

  Kathleen Robb, Esq., Trial Attorney for the Office of the U.S. Trustee
  Robert O Lampl, Esq.
  Rosemary C. Crawford, Esq., Chapter 7 Trustee

00004062.WPD